It please the Court, my name is Richard Tricker, and I represent defendant and appellant of VA Travelers' Indemnity Company as successor in interest by merger to Gulf Insurance Company. In broad terms, the issue before this Court is whether there's a duty to defend the Apollo action under the policy at issue. But more specifically, the question before this Court is whether there's a duty to defend the claims in that action under New York's Deceptive Practices Act. There are basically three grounds in my brief that I set forth why there is no duty to defend. But before I talk about those three grounds, I want to discuss what's not at issue before this Court. First, the District Court found there was no advertising injury coverage for the Apollo action. Second, the District Court also found there was no duty to defend based on seven of the eight claims in the Apollo action. There's been no appeal of those terminations, and WESTERN has waived any objections to those terminations. So what we're confronted with solely is whether there is a duty to defend the New York Deceptive Practices Act under the Gulf policy personal injury provision. As I indicated, there are three grounds. First is the insuring provision. Second is the exclusion. And the third is the notice provision. In terms of the insuring provision, we are looking at a personal injury coverage policy that has enumerated offenses. The only one that is at issue here today is the disparagement insuring provision. And it's our position, and I think it's undisputed, that the underlying complaint in the Apollo action did not contain a disparagement claim by name. It only included a Deceptive Practices Act claim, which is not an enumerated offense. And it's our position in our moving papers that under this Court's decision in Microtech, you can stop there because there isn't such a claim for disparagement in the Apollo action by name. Fourteen months after it was begun, you can't not read into one by looking at the allegations of the complaint. But even if you do look at the allegations of the complaint in the Apollo action, you're not going to find disparagement. It's our position that interpreting what disparagement means for this case, you must look at New York law as to what New York substantially is disparagement. New York talks about injurious falsehoods. There is no injurious falsehood alleged in the Apollo action. I'd have the Court take a look at paragraphs 85 and 86 of the complaint, which are the fundamental basis of what Western argument is. But those paragraphs don't use the word false. They merely indicate that Western communicated with banks involved in the production and financing for the Apollo show for the purpose of informing them that ownership of rights in the trademarks relating to the show are contested. There's no allegation that that was a false statement. And, in fact, I believe it was a true statement. Paragraph 86 says, the intended result of Western's filings and communications with the banks was to place a cloud of title on the trademarks according to the – relating to the Apollo show. Again, there's no allegation that that was false. And for that reason, there's no disparagement alleged there or anywhere else in the complaint. And so we have not come in the insuring provision of the subject policy. Even if we did come within the insuring provision, it's our position that coverage is excluded by the field of entertainment endorsement. Essentially, this is a CGL policy issued to a company that does business in the entertainment industry. And for that reason, it came with this endorsement for the field of entertainment business, in particular trademarks, trademark infringement. The district court found that many of the claims below were excluded by this exclusion, but for some reason did not hold the same with this particular one claim. It's our position, based on cases out of the Sixth Circuit and the Fourth Circuit, that the trademark exclusion here applies because all of the claims made by Apollo are based on trademark infringement and are premised on that fact, including the one for deceptive acts and practices. The additional reason we believe that the trademark exclusion applies here is because in a somewhat unique situation, the claims being made in the Apollo action arose in the Second Circuit. The Second Circuit has a specific requirement in a trademark infringement case that in order to recover lost profits, one must allege bad faith. And that's exactly what the Apollo lawyers did in this case. They attempted to allege bad faith, and that's where these allegations that the district court relied on came from. These allegations of bad faith are instructively tied to the trademark infringement claims and are subsumed by the trademark exclusion in the policy. The third reason we believe there's no coverage is the lack of timely notice. I don't think there's any real substantive argument that if New York applies in this case, the claims are barred. New York has not adopted the notice prejudice rule. The claim in this case was given notice 14 months after it was received, and so the real question for this court is whether to apply New York or California law on this particular issue. As it indicated in our papers, it's our position that New York has a much greater instance on this particular issue. New York has specifically not adopted the notice prejudice rule for various reasons, including the fact that they believe that will lead to prompt resolution of claims and will protect New York claimants. Here you're looking at a New York claimant, Apollo, bringing a state law claim arising out of conduct that only could occur in New York, and the issue is which laws are applied. As we argue in our moving papers, we firmly believe that New York has greater governmental interest on the notice provision than does California. And, in fact, California has some governmental interest which are conducive to that. In other words, California also would like to seek prompt resolution of claims and fair resolution of claims. So it's our position that New York law applies in the notice provision and that coverage should be barred. Of course, there were several instances of relationship to California law here, right? Wasn't it entered into in California? Undoubtedly, we are dealing with a California-insured and that the policy, as far as I know, was delivered in California. But, clearly, all the other factors in terms of where the claim arose, who the claimant was, where the claim was litigated, what the claim was all about had to do with conduct that took place in New York. And New York has a right to protect its claimants. Apollo and other people who are in New York and people who come into New York, such as Western, should be fairly warned that they are subject to New York law. And if you were to adopt Western's position, every state, anybody from whatever state would go into New York and that law would apply to whether or not the notice prejudice rule applied in that particular case. If this was a New York insurance company and we were in New York, no notice prejudice rule. Does this insurance contract have a choice of law provision? Not to my knowledge, Your Honor. Okay. I assume if we've gotten this far and you don't know, that there probably isn't. I hope I didn't miss it, though. Yes. I don't believe so, Your Honor. But it's our position that the facts in this case weigh in favor of application of New York law. And for these three reasons, we believe that the judgment of the district court was wrong, it should be reversed, the case should be remanded, and that the only alternative this Course has is to enter judgment in favor of Gulf, basically declaring that there's no duty to defend. This, the Apollo action, I would submit at this point there's time for response. Great. Thank you. Thank you for your argument. Counsel? May it please the Court, Jeffrey Raskin for Western International Syndication. Good morning and welcome. Good morning. You can take the Apollo lawsuit, scratch off the words New York Deceptive Practice Act, cause of action, and replace that with the word antitrust, and you'd have a total analog to the CNA v. Seaboard case in California and the Reuter and Finn v. Seaboard case in New York. Insurance coverage, and particularly the duty to defend, is not gauged based upon the title of the cause of action. That's been the law of California for the last 40 years, since Gray v. Zurich first announced the rule. And it's been the law of New York for at least 25 years in the Reuter and Finn case. You look at the facts alleged in the complaint that suggest a legal liability that is potentially covered by the policy. Antitrust, which was at issue in the CNA case and the Reuter and Finn case, is not an enumerated offense in any insurance policy, certainly not under a personal injury provision. But disparagement is. Insurance policies do not cover causes of action. They cover offenses, or they cover bodily injury, or they cover property damage. The allegations in the Apollo complaint were that Western made a lot of false statements. They made false statements to the banks about the contested right to ownership of the Apollo show. They made false statements, allegedly, to an industry trade journal that Western was the distributor of the Apollo show, and that was not true. They allegedly made false statements to TV stations, saying that the Apollo show would not be broadcast, but instead Western's program would be broadcast instead. We look at the allegations in the complaint, not the legal argument that might flow from those allegations. This was recognized in this court in the last year, in Pan Pacific v. Golf, which is the same defendant here today. It's at 471 Fed Third 961. At 966, the court said, in deciding... Is this citation in your brief? It's in my Rule 28J letter. Okay. Opposing counsel has it? Yes. Okay. In deciding whether a certain remedy is insurable, we must look beyond the labels of the asserted claims or remedies. We don't look at the labels. That was repeated again by this court, also in my Rule 28J statement, United Western Growers v. Twin City Fire Insurance Company, 457 Fed Third 1106. At 1112, the court says, when dealing with unproven allegations, which is what we're at right now, coverage is not framed based on the isolated allegations in the complaint, but you look at the complaint as a whole. This is also important with respect to what Mr. Tricker also said about whether Apollo could have recovered for claims based upon statements made outside of the state of New York, or whether it had to allege bad faith, or whether it had to prove certain elements of its case to win. That's not relevant for the duty to defend. The traveler's policy, like all CGL policies, require a defense even against false, fraudulent, or groundless suits. So whether or not Apollo could have recovered based on its elaborate theories that it came up with for purposes of adversarial purposes isn't important. We look at what the allegations said. They say it's related to trademark problems. Is that correct? No. There were a lot of different allegations, some of which were trademark, and we never contended that the trademark claims were covered under this policy. They made allegations concerning trademark. They claimed contracts were breached. They claimed duties were breached. But they also alleged a number of allegations that Western did a bunch of things by way of verbal communications, whether to banks, whether to TV stations, whether to an industry trade journal. They also alleged that Western filed a false and fraudulent lawsuit in Los Angeles concerning its alleged rights to this TV show. So they're not inextricably linked. What Mr. Tricker also is referring to is the Apple case that he cited in his brief. I think it's industrial indemnity versus Apple. The problem with that argument, though, is that in that case all of the allegations were trademark allegations. The tort claims were related to Apple's alleged use of the trademarks of the Apple Corp. Not only were those inextricably linked, but there were no allegations of disparagement. There were no allegations of advertising injury. It was all a trademark case. The Apollo case that's pled was much broader than trademarks. It was an entire realm of conduct that Western supposedly engaged in that caused injury to Apollo. With respect to the choice of law argument, there is no choice of law provision in this policy, and I think whether there's a conflict between New York and California on this issue is related to the comparative impairment analysis that actually must be done. We don't just look at who's got more interest or who's got a greater interest. If you look at the New York cases on late notice, the concern is fraud and collusion. And the cases that have found a forfeiture of benefits based on late notice involve things such as judgments entered before tender, default judgments entered before tender, settlements entered before tender. Those situations present the possibility of fraud and collusion. Here, tender was made and there was a lot of wrangling over a counterclaim. There was wrangling over arbitration. The meat of the case, however, did not start until after tender was made to travelers. They were asked to defend. They were asked to get involved in the case. They were asked to participate in settlement conferences. None of the depositions that happened in the case before travelers was tender. Basically the case went into litigation mode after travelers was tendered. So even if the New York courts would possibly find a forfeiture under those situations, you look to the comparative impairment test between California and New York, California has required prejudice for late notice since the 1930s. We don't think that in this situation the New York courts would find a forfeiture because Gulf still had the opportunity to defend the case, settle the case, and the problems with fraud and collusion were not present. And you look at the policy. The insurer is in California. Properties are insured in California. There are California-related endorsements. That tells the parties that a coverage dispute between them likely would be handled under California law. That's all I have. Okay. Rebuttal. Just two points, Your Honor. First, there's a lot of discussion about false statements, but I think the Court needs to read the complaint for itself to see there are no allegations of false statements made by Apollo. The word false is just not there. It's also important to note that it's not just simply false statements that trigger disparagement. It has to be false statements about Apollo's product. It has to be that, you know, something false about the product. Just because Western made a false statement, it doesn't mean it's disparagement if it's about something else entirely different. You kind of have to go through those requirements to find disparagement. The other thing is, and I think the record is clear on this, but the delay tended, a lot happened before Travelers of Gulf got notice. It wasn't like the case sat around for 14 months. And I think the record is clear. A lot happened. A lot of discovery happened. And most of the discovery happened. And so it's not simply, well, it was just laying there and wait. It was a lot of work that went on before Gulf was involved. And I think, again, one of the reasons that New York has the rule it has is it wants to get notice to the insurance carrier as promptly as possible. And in this case, you know, to protect claimants such as Apollo. And with that, I would submit, Your Honor. Okay. Thank you both very much for your arguments. A very interesting case. Appreciate you coming in today. The case just argued will be submitted for decision.
judges: Ferguson, Siler, Hawkins